

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

BRAD LINDSEY,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　APPELLANT,　　　)
　　　　　　　　　　　　　　　　　　)　　WD86653
v.　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　OPINION FILED:
　　　　　　　　　　　　　　　　　　)　　November 26, 2024
STATE OF MISSOURI,　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　RESPONDENT.　　　)

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Jalilah Otto, Judge**

**Before Division Three:** Mark D. Pfeiffer, Presiding Judge,
Gary D. Witt and Thomas N. Chapman, Judges

Mr. Brad Lindsey ("Lindsey") appeals from the judgment entered by the Circuit

Court of Jackson County, Missouri ("motion court"), following an evidentiary hearing

denying Lindsey's Rule 29.15 post-conviction relief motion.  We affirm.

## Facts and Procedural History[1]

On the night of May 14, 2016, Lindsey and Victim[2] were at the home of D.L. along with five others, including D.L. Most were relaxing, listening to music, and drinking. Lindsey drank three to four cups of wine and one beer, and also smoked marijuana and cigarettes dipped in PCP. Lindsey testified that he was intoxicated.

At some point that night, Victim tried to purchase marijuana from Lindsey. Victim and Lindsey disagreed over the price and began to argue. They were in the living room of D.L.'s home, and D.L. asked both Lindsey and Victim to leave. Instead, the argument moved to one of the bedrooms. Another guest, M.S., went to the bedroom to calm Lindsey down. The argument, however, escalated into a physical fight. Lindsey told police that Victim swung at Lindsey but missed, which caused Lindsey to fall on the floor and cut his hands. Lindsey got up and hit Victim three times. D.L. came into the bedroom and found both men on the ground fighting. D.L. pulled the two men off of each other.

D.L. told police that he had separated Victim and Lindsey a couple minutes before the shooting occurred. During that time, D.L. again asked the men to leave his home.

---

[1] "On appeal from the motion court's denial of a Rule 29.15 motion, we view the facts in the light most favorable to the verdict and judgment." *Balbirnie v. State*, 649 S.W.3d 345, 349 n.1 (Mo. App. W.D. 2022) (citing *McFadden v. State*, 553 S.W.3d 289, 296 n.2 (Mo. banc 2018)). Much of this statement of facts is taken directly from the opinion issued in Lindsey's direct appeal, *State v. Lindsey*, 597 S.W.3d 240, 242 (Mo. App. W.D. 2019), without further attribution.

[2] Pursuant to the directive of section 509.520 (Supp. III 2023), we do not use any witness names in this opinion, other than parties to the underlying litigation. All other statutory references are to THE REVISED STATUTES OF MISSOURI (2016), as supplemented through May 14, 2016, unless otherwise indicated.

Lindsey pulled out a .38 caliber revolver; D.L. said "no, Brad" before Lindsey shot Victim. Lindsey admitted during his testimony that Victim never had a gun nor threatened to harm him with a weapon.

Lindsey pulled the gun's trigger three times before it fired a bullet. On the fourth attempt, the gun fired. Ultimately, Lindsey pulled the trigger five times, successfully firing two bullets, which hit Victim fatally in the neck and chest.

D.L. called 911 after the shooting while Lindsey fled the house with the gun, his cell phone, and Victim's cellphone. He threw the gun and his clothing into the Missouri River from a bridge. He disposed of the cellphones by throwing them out the window while driving on a highway. Afterwards, he went to eat with his nephew and returned to his residence.

The police contacted Lindsey at his residence and brought him in for questioning. The police also searched Lindsey's residence pursuant to a warrant but did not locate the gun or the clothes worn by Lindsey during the shooting. Lindsey confessed to police during questioning that he tossed those items off a bridge. Lindsey also confessed to police that he was intoxicated from smoking drugs (PCP cigarettes and marijuana) and drinking on the night of the homicide and that he discharged a gun at Victim multiple times.

The State tried Lindsey for murder in the first degree (Count I), armed criminal action (Count II), unlawful use of a weapon for firing a handgun while intoxicated (Count III), and tampering with physical evidence (Count IV).

During trial, Lindsey testified that he felt "very guilty" for the charge of tampering with physical evidence. When asked about the charge for unlawful use of a weapon while intoxicated, he responded: "Yes. I'm guilty for that." However, he denied guilt as to first-degree murder, claiming self-defense.

As to Count I, the jury was instructed on first-degree murder and each of its lesser included offenses, including involuntary manslaughter. The jury was also instructed on self-defense with regard to Count I.

As to Count III, the jury was instructed pursuant to Instruction 14 that they must find Lindsey guilty of unlawful use of a weapon if they believed the evidence showed beyond a reasonable doubt:

> First, that on or about May 15, 2016, in the County of Jackson, State of Missouri, [Lindsey] knowingly discharged a firearm, and
> Second, that [Lindsey] was then intoxicated, and
> Third, that the firearm was loaded[.]

Instruction 14 did not include a separately numbered paragraph for self-defense, and Lindsey's trial counsel offered no objection to the instruction.

The jury found Lindsey guilty of all four counts as charged. Lindsey was sentenced to life without parole on Count I and concurrent sentences on Counts II-IV of ten years, four years, and four years, respectively. We affirmed Lindsey's convictions. *State v. Lindsey*, 597 S.W.3d 240, 242 (Mo. App. W.D. 2019).

4

Lindsey then timely filed his *pro se* Rule 29.15[3] motion for post-conviction relief ("PCR") and appointed counsel timely filed an amended motion pursuant to Rule 29.15. Lindsey raised three claims of ineffective assistance of counsel, including as relevant to this appeal, that trial counsel provided ineffective assistance for failing to object to the trial court instructing the jury on Count III without submitting a self-defense instruction.

The motion court held an evidentiary hearing, and Lindsey presented the testimony of his trial counsel. On September 8, 2023, the motion court issued a judgment denying Lindsey's claim. In its judgment, the motion court made the following findings regarding trial counsel's testimony:

> Trial counsel . . . testified at the evidentiary hearing. [Trial counsel] testified that he has practiced criminal law as a Public Defender in the State of Missouri since 1988. He also testified that he has extensive criminal jury trial experience and has previously handled homicide trials with self-defense claims.
>
> [Trial counsel] testified that his strategy at trial was to argue self-defense on Counts I and II and concede Counts III and IV. He stated that he believed conceding Counts III and IV would help Movant gain credibility with the jury regarding his self-defense claim.
>
> [Trial counsel] testified that Movant had confessed to Counts III and IV in his interview with the police. [Trial counsel] also testified that he discussed the trial strategy of conceding guilt on Counts III and IV in depth with Movant, and that Movant was in agreement with this strategy. At trial Movant testified that he was guilty of Counts III and IV, which was consistent with his confession to police.
>
> [Trial counsel] also testified that the evidence would not have changed—specifically, evidence that Movant had confessed to discharging a firearm while under the influence of drugs and alcohol—if he had requested a self-defense instruction on Count III, Unlawful Use of a

---

[3] All rule references are to the I MISSOURI COURT RULES (2023), unless otherwise indicated.

Weapon while Intoxicated. [Trial counsel] also believed it would have been counterproductive to argue self-defense on a count where Movant had already conceded guilt.

The motion court also issued the following legal conclusions addressing its denial of Lindsey's post-conviction relief claim:

As discussed above, the Court finds [trial counsel] engaged in a reasonable trial strategy by conceding guilt on Counts III and IV. [Trial counsel] reasonably believed that this strategy would increase Movant's overall credibility with the jury. He also testified that he wanted Movant to appear credible when Movant spoke of self-defense in Counts I and II.

Ultimately, the jury found the defendant guilty of Count I – Murder in the First Degree and Count II – Armed Criminal Action. The jury rejected Movant's claim of self-defense on the murder offense and did not believe that Movant acted in lawful self-defense in killing the victim. There is no reasonable probability that the jury would have reached a different verdict with regard to Count III – Unlawful Use of a Weapon while Intoxicated, if a self-defense instruction had been requested or given on that count.

Although [trial counsel] testified at the evidentiary hearing that it may have been an oversight on his part not to request the self-defense instruction on Count III, he conceded that asking for a self-defense instruction would have been contradictory to his trial strategy of conceding guilt on Count's III and IV.

Moreover, at trial Movant testified that he was carrying a gun the evening the homicide occurred "for protection." He further testified that he had been drinking alcohol and consuming drugs when he shot the victim.

The Court finds that there is no reasonable probability that the jury would have reached a different conclusion and acquitted Movant of Count III, Unlawful Use of a Weapon while Intoxicated, if [trial counsel] had requested a self-defense instruction for that offense.

The Court further finds that [trial counsel] had no duty to request such an instruction, as it would have undermined his reasonable trial strategy. The Court also finds, that [trial counsel]'s failure to object to the instruction on Count III did not deprive Movant of his right to a fair trial.

Movant has failed to prove both prongs of the *Strickland* test, by failing to prove deficient performance or establish prejudice.

This appeal followed.

## Standard of Review

"To be entitled to post-conviction relief for ineffective assistance of counsel, a movant must show by a preponderance of the evidence that his or her trial counsel failed to meet the *Strickland* test." *Watson v. State*, 520 S.W.3d 423, 435 (Mo. banc 2017) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Under *Strickland*, the movant must demonstrate: "(1) his trial counsel failed to exercise the level of skill and diligence that a reasonably competent trial counsel would in a similar situation, and (2) he was prejudiced by that failure." *Id.* (citing *Strickland*, 466 U.S. at 687). If movant fails to prove either prong, relief cannot be granted. *Hecker v. State*, 677 S.W.3d 507, 512 (Mo. banc 2023). "*Strickland* . . . calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Harrington v. Richter*, 562 U.S. 86, 110 (2011). "In reviewing the performance prong, [the movant] must overcome the presumption[] that any challenged action was sound trial strategy . . ." *State v. Simmons*, 955 S.W.2d 729, 746 (Mo. banc 1997).

"Appellate review of a motion court's dismissal of a post-conviction relief motion is limited to determining whether the findings and conclusions of law are clearly erroneous." *Propst v. State*, 535 S.W.3d 733, 735 (Mo. banc 2017) (citing *Price v. State*, 422 S.W.3d 292, 294 (Mo. banc 2014)); *see also* Rule 29.15(k). "A motion court's findings and conclusions are clearly erroneous if this Court 'is left with the definite and

firm impression that a mistake has been made' after a review of the entire record."

*Propst*, 535 S.W.3d at 735 (quoting *Price*, 422 S.W.3d at 294). "The motion court's findings of fact and conclusions of law are presumed to be correct." *Beck v. State*, 637 S.W.3d 545, 551 (Mo. App. W.D. 2021) (quoting *Hays v. State*, 360 S.W.3d 304, 309 (Mo. App. W.D. 2012)). The motion court's judgment "will be affirmed if cognizable under any theory, regardless of whether the reasons advanced by the [motion] court are wrong or not sufficient." *Driskill v. State*, 626 S.W.3d 212, 224 n.6 (Mo. banc 2021) (quotation marks omitted).

**Analysis**

In his single point on appeal, Lindsey asserts trial counsel was ineffective for failing to object to the submission of Instruction 14 because it lacked a self-defense paragraph and that Lindsey was prejudiced as a result. Our analysis of the *Strickland* performance prong is dispositive of this appeal.

The motion court concluded that trial counsel was not constitutionally deficient in his performance as Lindsey's trial counsel and, particularly, that he had no duty to request a self-defense instruction on the verdict directing instruction relating to unlawful use of a weapon because doing so would have undermined his reasonable trial strategy. We agree.

"A trial strategy decision may only serve as a basis for ineffective counsel if the decision is unreasonable." *McLaughlin v. State*, 378 S.W.3d 328, 337 (Mo. banc. 2012). In evaluating claims of ineffective assistance of counsel, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own

8

statements or actions." *Payne v. State*, 509 S.W.3d 830, 839 (Mo. App. W.D. 2016) (quoting *Strickland*, 466 U.S. at 691). When a defendant knowingly and voluntarily submits to a strategy proposed by counsel, he cannot later complain about the competency of counsel. *State v. Thomas*, 625 S.W.2d 115, 124 (Mo. 1981) ("The failure of a strategy knowingly and voluntarily pursued by defendant does not entitle him to another try under the guise of ineffective assistance of counsel."); *Vogel v. State*, 31 S.W.3d 130, 140-41 (Mo. App. W.D. 2000) (holding that counsel did not offer ineffective assistance where the defendant acquiesced to proceed on a defense of misidentification in a murder trial rather than pursing a theory of self-defense).

As the motion court correctly noted in its judgment, trial counsel testified that he had over thirty years of practice as a public defender; that he implemented a strategy of having Lindsey concede to the lesser felony charges of tampering with physical evidence and unlawful use of a weapon (in part, because Lindsey had already confessed to law enforcement about the factual basis supporting his guilt for those crimes) to gain credibility with the jury and focus the jury's attention on his self-defense claim for first-degree murder; that trial counsel discussed this strategy in depth with Lindsey; and that Lindsey *agreed to* and *actively participated in* this strategy before and during trial.

Though Lindsey now expresses dissatisfaction over trial counsel's failure to pursue self-defense on all counts, he does *not* contest his *acquiescence* to the strategy at trial. In fact, the trial transcript bears out that Lindsey testified in accordance with the trial strategy, stating that he was "guilty" of the tampering with physical evidence and

9

unlawful use of a weapon charges, but "not guilty" of first-degree murder because he was forced to act out of self-defense:

> Q. How do you feel about tampering with evidence?
> A. Very guilty.
> Q. And the other, there's a count of firing a weapon while intoxicated.
> A. Yes. I'm guilty for that.
> Q. How do you feel about Count I, the charge of murder?
> A. No.
> Q. And you've had a lot of time to think about it, right?
> A. Two years worth.
> Q. You still feel that you're not guilty of the murder charge?
> A. I'm not guilty of—I'm not guilty, my man. Nowhere close because I did not want to do it.

Having knowingly and voluntarily submitted to trial counsel's strategy, Lindsey cannot now complain about it even though it proved unsuccessful. *Vogel v. State*, 31 S.W.3d at 140-41; *Thomas v. State*, 475 S.W.2d 98, 101 (Mo. 1971) ("Appellant and his counsel intentionally and understandingly followed a course of trial strategy and 'gambled' on its success. Because that strategy did not produce the desired result, appellant should not now be entitled to try a different strategy before a different jury.")

Lindsey nonetheless contends that it was *per se* unreasonable for trial counsel to argue self-defense on a single count "but not the remaining counts where available." However, an available self-defense instruction is not required if the defense fails to inject evidence of self-defense. *State v. Powers*, 913 S.W.2d 138, 141 (Mo. App. W.D. 1996) ("A defendant has the burden of injecting the issue of self-defense into his case by substantial evidence."). Lindsey did *not* inject evidence of self-defense on Count III. Instead, he admitted he was "guilty" of that crime and only claimed that he was innocent of the first-degree murder charge because of his self-defense.

10

Likewise, Lindsey's argument *requiring* an "all-or-nothing" trial strategy approach is inconsistent with the *Strickland* standard, which does *not* require that counsel pursue one trial strategy to the exclusion of another.  *McLaughlin v. State*, 378 S.W.3d 328, 337 (Mo. banc 2012) ("The choice of one reasonable trial strategy over another is not ineffective assistance."); *McNeal v. State*, 500 S.W.3d 841, 845 (Mo. banc 2016) (holding no ineffective assistance in failing to request an instruction, even if requesting that instruction would have "little downside.").  Rather, *Strickland* contemplates that counsel will use their judgment and experience to determine if pursuing an across-the-board defense is reasonable under the unique facts of the case they are defending or if offering the option of convictions to lesser charges will better serve their client. *McLaughlin*, 378 S.W.3d at 337.

Furthermore, this court has recognized that trial counsel "makes an *objectively reasonable* choice not to submit an available instruction when the instruction would be inconsistent with the defense's theory at trial."  *McNeal*, 500 S.W.3d at 844 (emphasis added).  As previously discussed, Lindsey and trial counsel pursued a hybrid defense at trial—conceding guilt to the jury on the lesser felonies while pursuing a theory of self-defense on the first-degree murder charge.  The motion court accurately noted trial counsel's testimony that these concessions were consistent with *confessions* Lindsey had already made to police and that, in trial counsel's view, it would have been "counterproductive" to argue self-defense on a count *where Lindsey had already conceded guilt*.

Undeterred, Lindsey argues that the motion court "mischaracterized" trial counsel's testimony by only referencing his statement that an objection would have been "counterproductive" without also including trial counsel's testimony that the failure to object "may have been an oversight." Lindsey's argument ignores that the motion court was entitled to credit some parts of trial counsel's testimony while disregarding others. *Lawrence v. State*, 628 S.W.3d 777, 780 (Mo. App. S.D. 2021) ("[T]he motion court is free to believe all, part, or none of the witnesses' testimony."). In addition, trial counsel's "oversight" statement was clearly offered with the benefit of post-trial knowledge that his chosen strategy did *not* secure an acquittal. An ineffective assistance inquiry is not concerned with "the distorting effects of hindsight" but rather the reasonableness of trial counsel's decision *at the time it was made*. *Sanders v. State*, 652 S.W.3d 258, 271 (Mo. App. W.D. 2022) (citing *Strickland*, 466 U.S. at 689).[4]

Trial counsel's actions and advice were objectively reasonable at the time they were made because they were consistent with his review of the evidence (i.e., Lindsey's confessions to law enforcement) and the strategy presented at trial. *See Forrest v. State*, 290 S.W.3d 704, 708 (Mo. banc 2009) ("Trial counsel's decisions made after considering the law and facts and pondering alternative strategies generally are not disturbed by a court on review."). Indeed, the entire aim of trial counsel's strategy was to gain

---

[4] Even if trial counsel's statements could be read has a lack of conscious decision, "what matters is whether counsel's performance was objectively reasonable, however it came about." *McNeal v. State*, 500 S.W.3d 841, 844 (Mo. banc 2016). For reasons cited herein, trial counsel's performance was objectively reasonable, and Lindsey cannot overcome the presumption that his trial counsel exercised sound trial strategy.

12

credibility with the jury by conceding convictions on the lesser felonies that Lindsey had already confessed to law enforcement shortly after the crime. We will not find trial counsel ineffective merely because his strategy proved unsuccessful. *State v. Carter*, 955 S.W.2d 548, 560 (Mo. banc 1997) (finding no ineffective assistance where counsel's gamble to evoke sympathy by having his client dress in jail clothes failed to secure an acquittal).

Because Lindsey cannot satisfy his burden of demonstrating that his trial counsel's performance was constitutionally deficient, he cannot meet the performance prong of the *Strickland* test, and the relief he requests on appeal cannot be granted.[5]

Point denied.

---

[5] Because Lindsey cannot satisfy the performance prong of the *Strickland* test, we need not address the prejudice prong. *Ex gratia*, however, we note that the jury rejected Lindsey's self-defense argument on the first-degree murder charge, and since any claim of self-defense would have necessarily relied upon the same evidence, there is no reasonable probability that the result of the jury trial would have been different even had the self-defense paragraph had been included in Instruction 14. Simply put, Instruction 14 related to a criminal charge that Lindsey had already confessed to in his custodial interview with law enforcement and admitted his guilt to the jury at trial. It would have been illogical to then argue to the jury that they should have acquitted him of unlawful use of a weapon by reason of self-defense. Lindsey simply cannot satisfy the prejudice prong of the *Strickland* test on this record.

**Conclusion**

The motion court's judgment relating to Lindsey's Rule 29.15 post-conviction relief motion is not clearly erroneous and is, thus, affirmed.

_____

Mark D. Pfeiffer, Judge

Gary D. Witt and Thomas N. Chapman, Judges, concur.

14